UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRAGAN K., | ) |
| Plaintiff, | ) No. 19-cv-3283 |
| v. | ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dragan K.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits. The parties have filed cross motions for summary judgment. As detailed below, Plaintiff's motion for summary judgment (dkt. 14) is DENIED and Defendant's motion for summary judgment (dkt. 26) is GRANTED.

**I. Procedural History**

Plaintiff filed for disability on December 14, 2012, alleged a disability onset date of August 1, 2012. (Administrative Record ("R.") 867, 930.) Plaintiff's date last insured was December 31, 2014. (R. 869-70.) Plaintiff's application was denied initially and upon reconsideration. (R. 52-72.) Plaintiff appealed those denials and appeared at an Administrative Hearing (represented by current counsel) before ALJ Rebeca LaRiccia. (R. 85-86.) On August 13, 2014, ALJ LaRiccia issued an unfavorable decision. (R. 26-51.) Plaintiff filed suit, and on March 7, 2017, the Northern District of Illinois remanded the case for further proceedings. (R. 930-38.) On January 26, 2018, Plaintiff and counsel appeared at new Administrative Hearing before ALJ Edward Studzinski.

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

(R. 1288-1365.) On April 20, 2018, ALJ Studzinski issued a decision that followed the familiar five-step process and was ultimately unfavorable for Plaintiff. (R. 867-81.) The Appeals Council rejected Plaintiff's written exceptions to ALJ Studzinski's decision, and determined ALJ Studzinski complied with the court's March 2017 remand. (R. 853-57, 1038-39.) Plaintiff, through counsel, filed the instant action on May 15, 2019, seeking review of the Commissioner's most recent decision. (Dkt. 1.)

## II.  Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). A court's scope of review in these cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir.2008); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted).

## III.  Discussion

The Court finds the arguments in Plaintiff's bare-bones briefs can be summed up as follows: "(t)he Plaintiff would argue only one factor to the ALJ: How would you know my pain if you are

not me?" (Dkt. 32, p. 3.) The ALJ can understand Plaintiff's pain through medical evidence of record supporting Plaintiff's claims of limitation stemming from pain and disability, but there is no medical evidence of such limitations here. In fact, the ALJ asked Plaintiff's counsel multiple times at the Administrative Hearing to direct him to medical evidence other than Plaintiff's own testimony that would support any of Plaintiff's claims, and counsel could point to none. (R. 875-76, 1292-99, 1304-05, 1310, 1318, 1364.) Nor did Plaintiff's counsel adequately detail this information in Plaintiff's post-hearing brief as he assured the ALJ he would do. (R. 1038-39.) Yet the ALJ still dug through the Administrative Record to parse out whether Plaintiff's subjective complaints of pain were supported by medical signs and findings, *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000), and then issued a careful opinion finding they were not. Although Plaintiff continually stresses that the "totality of the evidence" supports his various allegations, the Court agrees with the ALJ that "the totality of the evidence certainly supported the existence of medically determinable impairments, but provided little support to the severity of symptoms and limitations." (R. 875.)

Plaintiff seems to assert that multiple diagnoses, on their own, necessarily precluded him from working even sedentary level work and thus entitled him to disability benefits. This is simply not true; while a claimant may indeed have a severe medically determinable impairment(s), the impairment(s) may not be of disabling severity – this determination is an axiomatic part of an ALJ's function in the disability benefits process. In fact, the Seventh Circuit has consistently reiterated that a disability claimant must establish specific limitations affecting his/her ability to work. *See e.g.*, *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) (plaintiff's "burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."); *Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007) ("the existence of these diagnoses and symptoms does not mean the ALJ was required to find that (plaintiff) suffered disabling impairments."); *Estok v. Apfel*, 152 F.3d 636, 640 (plaintiff "must

3

establish through other evidence an actual disability during the insured period. It is not enough to show that she had received a (particular) diagnosis…"); *see also*, *Frank B. v. Saul*, 2019 WL 6307651, at *12 (N.D. Ill. Nov. 25, 2019) ("finding an impairment and acknowledging its symptoms do not by themselves require a disability determination, only an analysis of their severity and impact on an ability to work"); *Shaun R. v. Saul*, 2019 WL 6834664, at *9 (N.D. Ill. Dec. 16, 2019) ("It bears repeating that diagnosis is not the same as disability."). The Court finds the ALJ's reasoning reflects this principle. He explained that the evidence "certainly supported the existence of medically determinable impairments, but it provided little support to the severity of symptoms and limitations resulting from those conditions."[2] (R. 875.)

While Plaintiff claims the ALJ failed to address the "endless opinions" (dkt. 14, p. 4) from treating sources, the record does not, in fact, contain a medical opinion from a treating source. *See*, *e.g.*, *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) (the "reports contain symptoms and diagnoses, but not a prognosis, a discussion of what [plaintiff] could do despite her impairments, or an assessment of her physical restrictions. *By contrast*, a medical opinion is a statement that reflects a judgment about the nature and severity of the impairment….") (emphasis added). While the administrative record does indeed chart Plaintiff's diagnoses, as discussed, Plaintiff diagnoses alone

---

[2]  As ALJ Studzinski told Plaintiff's counsel at the Administrative Hearing:
…your client has a severe medically determinable impairment. I accept that. The prior administrative law judge accepted that. I do not see the evidence the district court cited and it was not readily apparent to me elsewhere in the medical records, what it said that that was of disabling severity. And that's what I'm trying to find out is what evidence, and it can be any number of things. It can be your client's continued complaints and allegations. It can be aggressive and increasing treatment, doctor's comments as to the success or not of the treatment. It can be findings as to sensory, reflex deficits, range of motion, atrophy. It can be the prescription of ambulatory aides. It can be – or – and it can be medical opinions as to specific limitations…And I'm inviting you to point out that out to me.
(R. 1304.) Plaintiff's counsel only offered Plaintiff's testimony in response. (R. 1305.) The ALJ later observed what seems to be the theme of this case: "it surprises me that I have to guess at these possible limitations rather than you being able to give me an argument supported by medical evidence as to these limitations." (R. 1308-09.)

do not constitute medical opinions.³ The only actual medical opinions in this case appear to be those of the state agency doctors. While the ALJ did afford some weight to the state agency reviewing doctors' opinions (R. 55-58, 65-69, 878), he actually included *additional* restrictions within the RFC based on these opinions. (R. 878.) Additionally, as part of his role in weighing and examining medical opinions, the ALJ noted a minor factor (but nonetheless one that influenced his determination) that "no doctor has opined that [Plaintiff] is disabled, or advised him to limit himself in any manner…" *Id*. Ultimately, the Court cannot find error here, particularly because the Seventh Circuit has found "there is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'" *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (citing *Rice v. Barnhart*, 384, F.3d 363, 370-71 (7th Cir. 2004)). The Court finds the ALJ has built an "accurate and logical bridge" between the evidence and his conclusions about the medical "opinions" of record. *Steele*, 290 F.3d at 941.

Next, the Court addresses Plaintiff's comments that the ALJ cannot understand his pain, of which there are several peppered throughout his three-page argument,⁴ and which can be construed as a dispute on how the ALJ evaluated Plaintiff's subjective statements. The regulations set forth a two-step process for evaluating a claimant's own statements about his impairments. *See* 20 C.F.R.

---

³ Although Plaintiff asserts the "record is replete" with evidence demonstrating his debilitating limitations, he fails to support that statement with specific citations to the record, as is his burden to so do. (Dkt. 14, p. 4.); *Britney S. v. Berryhill*, 366 F. Supp. 3d 1022, 1028 (N.D. Ill. Apr. 8, 2019) ("If there is evidence to support Plaintiff's case, it's up to his attorney to direct the court to it."). It is unacceptable that Plaintiff vaguely cites to hundreds of pages of the record here as evidence of his limitations, when in reality these pages detail Plaintiff's diagnoses or the trajectory of his heart condition (from its review, the Court did not find these records detail any limitations stemming from Plaintiff's diagnoses). *See Herrman v. Astrue*, 2010 WL 356233, at *12 (N.D. Ill. Feb. 1, 2010) (Judges are not "archaeologists consigned to excavating masses of paper in search of possibly revealing information that might benefit the party whose briefs provided no clue of where to dig.") (citing *Northwestern Nat. Insurance Co. v. Baltes*, 15 F.3d 660, 662-663 (7th Cir. 1994)); *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."). Additionally, the later-submitted medical records related to Plaintiff's heart condition failed to demonstrate Plaintiff was disabled as of his date last insured of December 31, 2014.

⁴ Plaintiff's opening brief (dkt. 14) also appears to be in 16-point font, in violation of Local Rule 5.2(1)(1). The Court will not strike Plaintiff's brief under Local Rule 5.2(e), but cautions Plaintiff's counsel to ensure further filings comply with all applicable rules.

§ 404.1529. An ALJ first determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of the claimant's symptoms and determines how they limit the claimant's "capacity for work." 20 C.F.R. § 404.1529(c). In applying the second step, the ALJ assesses whether the objective medical evidence substantiates the claimant's symptoms to the extent that the ALJ must find that the claimant is disabled. *See* SSR 16-3p. If objective medical evidence does not support finding that the claimant is disabled, then the ALJ considers the objective medical evidence and "other evidence," including a list of non-exhaustive factors. *Id.* An ALJ's assessment is entitled to deference unless it is "patently wrong." *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

Here, the ALJ engaged in the proper assessment of Plaintiff's subjective symptoms. The ALJ provided many examples of how the record did not support, or even contradicted, Plaintiff's testimony about the severity of his limitations. (R. 875.) For instance, pursuant to 20 C.F.R. § 404.1529(i), the ALJ considered that despite testifying that he performed no activities, Plaintiff told his doctor in August 2013 that he felt better after he recently started exercising and denied any recent episodes of chest pain or other cardiac symptoms. (R. 713, 877, 1332-33.) At the March 2013 consultative examination, Plaintiff also reported he could walk a mile without difficulty. (R 484.) Pursuant to 20 C.F.R. § 404.1529(iv), the ALJ considered that despite Plaintiff's testimony he experienced side effects from his medication, treatment notes did not reflect that the reported this to doctors. (R. 1329.) Nonetheless, the ALJ specifically accounted for Plaintiff's reported side effects of dizziness or drowsiness in the RFC by including restrictions from driving, operating machinery, and working at unprotected heights. (R. 878.) Additionally, pursuant to 20 C.F.R. § 404.1529(v), the ALJ observed that Plaintiff did not pursue more frequent or more aggressive treatment despite his allegations of worsening back pain. (R. 876, 1344.) Similarly, the ALJ considered Plaintiff's

report that physical therapy helped his back pain, which contradicted his testimony.[5] (R. 876, 504, 1344.) The ALJ also compared Plaintiff's testimony that he fell twice a week due to severe swelling in his feet and ankles causing him to lose balance, with the fact that treatment notes did not reflect any reports of falls. (R. 875, 1319, 1324.) Likewise, the ALJ noted that treatment notes did not document Plaintiff's reported medication side effects, increased bathroom use, or need to lie down. (R. 876, 1324, 1326, 1329, 1331, 1335-36.) Deferentially, the ALJ acknowledged that each inconsistency "might appear relatively inconsequential in isolation, but in combination," they were consequential. (R. 876.)

Similarly, the ALJ also analyzed the inconsistencies between Plaintiff's testimony and his personal observations of Plaintiff at the hearing, which is a proper function of an ALJ. *See e.g.*, *Oakes v. Astrue*, 258 F. App'x 38, 43 (7th Cir. 2007) ("[T]his court has repeatedly endorsed the role of observation when determining credibility."); *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) (finding a minor inconsistency between testimony and the record coupled with observations during the hearing was sufficient to support ALJ's assessment of plaintiff's subjective symptoms). Although Plaintiff argues the ALJ put "excessive weight" on his observations of Plaintiff at the hearing, the Court disagrees, and finds that even if Plaintiff were right that this constitutes error, the ALJ's explanations in this regard are sufficient to *further* support the ALJ's assessment of Plaintiff's subjective symptoms. For instance, the ALJ noted how Plaintiff's testimony he could only sit for 15 minutes contrasted with Plaintiff sitting for nearly an hour at the hearing before getting up to use the restroom. (R. 875, 1329, 1337-38.) The ALJ compared Plaintiff's testimony he could walk for only half a block at the most, with his personal observations of Plaintiff walking smoothly and

---

[5] The Court notes that physical therapy is considered a conservative treatment (*see, e.g.*, *Burnam v. Colvin*, 525 F. App'x 461, 464 (7th Cir. 2013)) and finds the ALJ adequately discussed the physical therapy regimen Plaintiff was prescribed to address the moderately diminished range of motion in his back and legs, and then modified Plaintiff's RFC to account for the same. (R. 877-78.) The Court believes this rectifies the errors raised by the remanding magistrate judge in 2017. (R. 936.)

promptly without the use of an assistive device. (R. 875-76, 1330.) The ALJ weighed Plaintiff's testimony that his right arm worsened since a 2010 surgery, to where he could not hold five pounds, against the ALJ's observation of Plaintiff using his right upper extremity to pull open the restroom door. (R. 876, 1325-26.) Finally, despite Plaintiff's testimony he experienced pain at a nine out of a possible ten-point scale, the ALJ noted that plaintiff "did not appear terribly uncomfortable and was able to participate in the hearing process." (R. 875-76, 1342); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) ("hearing officer had an opportunity to observe [plaintiff] for an extended period of time and could gauge whether her demeanor, behavior, attitude and other characteristics suggested frankness and honesty and were consistent with the general bearing of someone who is experiencing severe pain."). The ALJ's analysis of Plaintiff's subjective symptoms based on his personal observations does not strike the Court as "patently wrong," particularly when coupled with the rest of the ALJ's subjective symptom analysis, and the Court will not reweigh the evidence or substitute its judgment for that of the ALJ on these points. *Elder v. Astrue*, 529 F.3d at 413. Thus, the Court finds the ALJ has built an "accurate and logical bridge" between the evidence and his conclusions concerning Plaintiff's subjective symptoms. *Steele*, 290 F.3d at 941.

**IV.  Conclusion**

Although it is true "[t]he ALJ does not live inside the claimant's body" as Plaintiff suggests (dkt. 14, p. 4), it is still the function of the ALJ to assess the available evidence, make credibility findings, and assign a residual functional capacity, and to do this in an adequately supported and explained manner. This is exactly what the ALJ here has done. The ALJ provided a narrative discussion of the medical and nonmedical evidence and assessed Plaintiff's abilities in accordance with 20 C.F.R. § 404.1545 and SSR 96-8p. On a record providing little support for any limitations stemming from Plaintiff's severe impairments, the ALJ adequately assessed the available evidence and concluded that Plaintiff was able to perform light level of work impeded by several additional

8

limitations, of which there existed significant numbers in the national economy. The Court can find no basis to remand on the arguments raised by Plaintiff. Plaintiff's motion for summary judgment (dkt. 10) is DENIED and Defendant's motion for summary judgment (dkt. 17) is GRANTED. The Court affirms hereby the final decision of the Commissioner denying benefits.

**ENTERED: 07/16/2020**

_____
Susan E. Cox,
United States Magistrate Judge